UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, a Connecticut Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GERALDO ALBERTO MAYER, JR., also known as ALBERTO MAYER, also known as GERARDO ALBERTO MAYER, also known as ALBERTO B. MAYER, an individual; MAYER CUSTOM HOUSE BROKER, INC., a California Corporation; ALBERTO MAYER dba MAYER CUSTOMHOUSE BROKER, an unknown form of business entity; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 07cv0711-BEN (POR)<br><br>ORDER:<br><br>(1) DENYING DEFENDANTS' MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT; AND<br><br>(2) GRANTING PLAINTIFF'S REQUEST FOR DEFAULT JUDGMENT |

**I. INTRODUCTION**

Defendants GERALDO ALBERTO MAYER, JR., also known as ALBERTO MAYER, also known as GERARDO ALBERTO MAYER, also known as ALBERTO B. MAYER, an individual; MAYER CUSTOM HOUSE BROKER, INC., a California Corporation; and ALBERTO MAYER dba MAYER CUSTOMHOUSE BROKER ("Defendants") move to set aside the Clerks's Entry of Default. In their Motion to Set Aside Default, Defendants claim that good cause exists to set aside the entry of default because (1) the default was not the result of willful

misconduct or intentional delay; (2) Plaintiff would suffer no prejudice if the default was set aside; and (3) Defendants have a meritorious defense. Plaintiff HARTFORD FIRE INSURANCE COMPANY ("Plaintiff") opposes Defendants' Motion and asks the Court to enter a final order of default. After a hearing on these motions and for the reasons that follow, the Court **DENIES** Defendants' Motion to Set Aside Default and **GRANTS** Plaintiff's Motion for Default Judgment.

## II.  FACTS

This case arises out of Defendants' customs broker business in which Defendants executed and delivered customs bonds on Plaintiff's bond forms. Sometimes in 2004, Plaintiff received claims from Customs and Border Protection on bonds Defendants had executed and delivered for a certain importer named Zuran Company, Inc. ("Zuran"). On September 21, 2004, Plaintiff instructed Defendants to stop executing and delivering Zuran bonds. Nevertheless, Defendants continued executing Zuran bonds without Plaintiff's permission, while neither reporting these bonds nor remitting premiums to Plaintiff. On July 29, 2005, Plaintiff again instructed Defendants to stop executing Zuran bonds. Plaintiff ultimately learned that Customs and Border Protection assessed over $2,000,000 in liquidated damages against Hartford on Zuran bonds that were executed after September 21, 2004. After a long negotiation process, Plaintiff was able to mitigate these damages to $392,802.20. Plaintiff incurred $26,528 in attorney's fees while negotiating with Customs and Border Protection.

On April 18, 2007, Plaintiff filed a Complaint against Defendants alleging negligence, breach of fiduciary duty, conversion, and fraud and deceit. Plaintiff asked for $419,33.20 in damages, plus pre-judgment interest from September 22, 2006 (the date on which Plaintiff remitted its final payment to Customs and Border Protection) to the date of judgment. On June 13, 2007, Plaintiff properly served Defendants via personal service. After Defendants failed to answer or otherwise respond to the Complaint, Plaintiffs obtained an Entry of Default from the Clerk of Court on July 12, 2007. On July 18, 2007, Plaintiffs served the copies of the Entry of Default on Defendants by mail.

## III.  APPLICABLE LAW

The Court has wide discretion to set aside an entry of default. *O'Connor v. Nevada*, 27

F.3d 357, 364 (9th Cir. 1994), *cert. denied*, 514 U.S. 1021 (1995) (citing *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986)) ("The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment."). The district court may set aside an entry of default "[f]or good cause shown." Fed. R. Civ. Proc. 55(c). "The good cause analysis considers three factors: (1) whether [the defendant] engaged in culpable conduct that led to the default; (2) whether [the defendant] had a meritorious defense; or (3) whether reopening the default judgment would prejudice [the plaintiff]." *Franchise Holding II, LLC. v. Huntington Rest.'s Group, Inc.,* 375 F.3d 922, 925-26 (9th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005) (citations omitted). "This tripartite test is disjunctive. Hence, a finding that the plaintiff will be prejudiced, *or* that the defendant lacks a meritorious defense, *or* that the defendant's own culpable conduct prompted the default is sufficient to justify the district court's refusal to vacate a default judgment." *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988) (citations omitted). Defendants have "the burden of showing that any of these factors favored setting aside the default." *Franchise Holding*, 375 F.3d at 926.

## IV. DISCUSSION

### A. Defendants' Culpable Conduct Prompted the Entry of Default

The first prong in a good cause analysis is determining whether Defendants engaged in "culpable conduct" that led to the default. The Ninth Circuit explained that a defendant's conduct is culpable if "a defendant 'has received actual or constructive notice of the filing of the action and failed to answer.'" *Franchise Holding*, 375 F.3d at 926 (citing *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988)). Culpable conduct is conduct for which "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Employee Painters' Trust v. Ethan Enter.'s, Inc.*, 480 F.3d 993, 1000 (9th Cir. 2007) (citing *TCI Group Life Ins. Plan*, 244 F.3d 691, 698 (9th Cir. 2001)).

Here, Defendants presented two inconsistent explanations for their failure to answer the Complaint. At first, Defendants falsely claimed that they were never personally served; that Defendant Mayer was away on a three-week-long business trip at the time of service; and that Mayer's relative was served instead of Mr. Mayer. In fact, Mayer had not yet left for his trip on

1  June 13, 2007, when the process server served him at his home. Mayer subsequently admitted that
2  he traveled to Mexico with his family on June 15th or 16th, 2007 and returned "on or shortly after
3  July 11, 2007." Mayer Decl. ¶ 4, Docket Entry No. 10.

4  Confronted with an affidavit from the process server, Mayer later introduced a second
5  version of the story in an attempt to excuse his false statements regarding service. This time, he
6  alleged that he was "confused" and "not good with dates" when he falsely claimed that he was
7  traveling on business on the day of service. *See* Mayer Decl. ¶ 7, Docket Entry No. 10. Mayer
8  claimed that he set aside and did not open the envelope containing the Complaint because he
9  mistakenly thought it contained divorce papers. *See id.* ¶¶ 1-3. Nevertheless, even after
10 confronting his wife later that day and discovering she was not divorcing him, Mayer still failed to
11 open the envelope. *Id.* Mayer's excuse for not opening the package was that he had mistakenly
12 opened another envelope on his desk instead. *Id.*

13 Such inaction, without a good faith explanation by Defendants, constitutes 'culpable
14 conduct' sufficient to enter a default judgment against them. *See Franchise Holding*, 375 F.3d at
15 926. Moreover, because Mayer repeatedly lied about the events related to service of process, the
16 Court is not convinced that Mayer presented any legitimate reasons for his failure to answer the
17 Complaint.

18 First, Mayer lied about being away when the service took place. Second, Mayer appears to
19 have lied about the fact that his trip was business-related, since he later admitted he was traveling
20 with his family. Third, Mayer lied about being "confused" about the documents he received from
21 the process server. In fact, the process server stated that he did *not* present Mayer with an
22 envelope; rather, the summons "were clipped together but not otherwise covered by any envelope
23 or other cover, so that the top summons were clearly visible." *See* Ostrowski Decl. ¶ 8, Docket
24 Entry No. 24. Fourth, Mayer falsely claimed that he was "confused," since the process server had
25 clearly explained to Mayer that "these were legal papers," and that Mayer was served personally
26 and "on behalf of [his] business entities." *Id.* Additionally, the summons clearly reflected the
27 name of Plaintiff – Hartford Insurance Company – on the cover, thus eliminating any potential
28 confusion regarding the nature of these documents. Finally, Mayer's declaration and the evidence

presented at the hearing indicate that Mayer failed to take reasonable steps to promptly respond to the Complaint. Not only did he allow the Complaint go unanswered while he was traveling for almost a month, but he also did not immediately try to retain an attorney after he had returned from his trip. Moreover, even after retaining a counsel, Mayer failed to show up for scheduled meetings thus causing further delay in this case.

Accordingly, the Court finds that Defendants acted in bad faith when they failed to respond to Plaintiff's Complaint after receiving notice of the lawsuit. Furthermore, Defendants presented no evidence of excusable neglect. Therefore, the Court **DENIES** Defendants' Motion to Set Aside Default and **GRANTS** Plaintiff's Motion for Default Judgment.

### B. Defendants Presented no Specific Facts Constituting Meritorious Defense

Because the Court finds that Defendants' culpable conduct led to the default, the Court does not need to evaluate the remaining two factors. *Cassidy*, 856 F.2d at 1415. However, even if the Court were to consider the remaining factors, Defendants simply did not present specific facts sufficient for this Court to find that they have a meritorious defense. *See Franchise Holding*, 375 F.3d at 926.

Meanwhile, Plaintiff offered uncontroverted evidence of at least two emails sent to Defendants with instructions to stop issuing Zuran bonds during the period in question. Defendants thus acted in bad faith by neglecting Plaintiff's instructions, by failing to notify Plaintiff about newly issued Zuran bonds, and by failing to promptly remit premiums for these bonds to Plaintiff. As a result of Defendants' bad-faith actions, Plaintiff ultimately had to pay $392,802.20 in liquidated damages to Customs and Border Protection. Therefore, even if the Court were to find that Defendants did not act culpably, Defendant's Motion to Set Aside Default would still be denied because they failed to present meritorious defense.

### C. Prejudice to Plaintiff

Plaintiff notes that it would suffer prejudice if the default was set aside because Plaintiff had to oppose Defendants' Motion to Set Aside Default and to travel to San Diego for a hearing on this motion. Spending "thousands of dollars getting . . . lawyers ready" may be sufficient to find prejudice at the pre-trial stage. *See Al-Torki v. Kaempen*, 78 F.3d 1381, 1385 (9th Cir. 1996). It is

1  unclear, however, whether the same level of prejudice arises where the default is set aside at the
2  motion-hearing stage.  But the Court need not decide this issue, since (1) Plaintiff's efforts in
3  preparing for a hearing and opposing Defendants' motion; (2) Defendants' failure to present
4  meritorious defense; and (3) Defendants' culpability in causing default all compel a ruling in
5  Plaintiff's favor.

### D.  Prejudgment Interest

California Civil Code section 3287 controls the award or denial of prejudgment interest in this diversity case. *See Safeway Stores, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 64 F.3d 1282, 1291 (9th Cir. 1995) ("In a diversity case, state law controls the award or denial of prejudgment interest.") (citation omitted).  Section 3287(a) provides that "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him on a particular day, is entitled also to recover interest thereon from that day."  Cal. Civil Code § 3287(a).  "Under Section 3287(a), damages are considered certain or capable of being made certain where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." *National Union Fire Ins. Co. of Pittsburgh, Pa.*, 64 F.3d at 1291 (citations and internal quotations omitted); *see also Fireman's Fund Ins. Co. v. Allstate Ins. Co.*, 234 Cal. App. 3d 1154, 1173 (1991).  "The statute does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his debtor." *Fireman's Fund Ins. Co.*, 234 Cal. App. 3d at 1173 (citation and internal quotations omitted).  In other words, "[w]hile a factual dispute respecting damages will preclude a grant of prejudgment interest under § 3287(a), a legal dispute will not." *Highlands Ins. Co. v. Continental Cas. Co.*, 64 F.3d 514, 521 (9th Cir. 1995).

The focus is upon "the *defendant's* knowledge about the amount of the plaintiff's claim." *Chesapeake Industries, Inc. v. Togova Enterprises Inc.*, 149 Cal. App. 3d 901, 907 (1983) (emphasis in original).  Specifically, as the court in *Chesapeake Industries, Inc.* stated:

> The fact the plaintiff or some omniscient third party knew or could calculate the amount is not sufficient. The test we glean from prior decisions is: did the *defendant* actually know the amount owed or from reasonably available information could the defendant have computed that amount. Only if one of those two conditions is met should the court award prejudgment interest.

149 Cal. App. 3d at 907 (emphasis in original). "An award of prejudgment interest is intended to make the plaintiff whole for the accrual of wealth which could have been produced during the period of loss." *Wisper Corp. v. California Commerce Bank*, 49 Cal. App. 4th 948, 958 (1996) (citation and internal quotations omitted).

Here, the amount Plaintiff paid in liquidated damages to Customs and Border Protection on Zuran bonds was certain or capable of being made certain by calculation under California Code § 3287(a) as of September 22, 2006, when Plaintiff remitted its final payment on these bonds. There is no factual dispute as to the amount of costs Plaintiff incurred in negotiating its liability for Zuran bonds, and those costs were fixed. Accordingly, Plaintiff is entitled to an award of prejudgment interest at the rate of 7% per annum from September 22, 2006 to the date of this Order. *See* Cal. Const. art. XV, § 1; *Lund v. Albrecht*, 936 F.2d 459, 465 (9th Cir. 1991).

## V.  CONCLUSION

Because the Court determined that Defendants' culpable conduct caused the entry of default, the Court **DENIES** Defendant's Motion to Set Aside Default. The Court **GRANTS** Plaintiff's Motion for Default and enters a judgment against Defendants in the sum of $419,333.20 plus prejudgment interest at the rate of 7% per annum from September 22, 2006 to the date of this Order.

**IT IS SO ORDERED**.

DATED: November 9, 2007

_____
Hon. Roger T. Benitez
United States District Judge